LIPSON NEILSON P.C.
Kaleb D. Anderson, Esq.
Nevada Bar No. 7582
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada  89144
Phone: (702) 382-1500
Fax: (702) 382-1512
kanderson@lipsonneilson.com

KENT, BEATTY & GORDON, LLP
Joshua B. Katz, Esq.
Eleven Times Square
New York, NY 10036
Phone: (212) 421-4300
jbk@kbg-law.com
*Pro Hac Vice Application forthcoming*

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GAIA BOTANICALS, LLC,<br><br>                              Plaintiff,<br><br>            v.<br><br>PACIFIC PAYMENT TECHNOLOGIES, LLC d/b/a UBIQUITY, TRE'LAGE, LLC, MARIN RAIN, INC., NEIL HABOUSH, NEIL SOLLINGER, MARK SOLLER, JAMES T. LOVERN, PASHA SOLLINGER, NANCY E. LABIER, Does 1-50 and XYZ Corps., 1-50,<br><br>                              Defendants. | **CASE NO.**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

        Plaintiff Gaia Botanicals, LLC, d/b/a Bluebird Botanicals ("Gaia" or "Plaintiff"), for its

complaint against Defendants Pacific Payment Technologies, LLC d/b/a Ubiquity ("Pacific"),

Tre'Lage, LLC ("Tre'Lage"), Marin Rain, Inc. ("Marin Rain") (collectively "Company

Defendants"), Neil Haboush ("Haboush"), James T. Lovern ("Lovern"), Mark Soller

("Soller"), Neil Sollinger ("N. Sollinger"), Pasha Sollinger ("P. Sollinger"), and Nancy E.

LIPSON NEILSON P.C.
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

LaBier ("LaBier") (collectively "Individual Defendants"), and Does 1 through 50 and XYZ Corps. 1 through 50 (collectively "Defendants") alleges as follows:

### NATURE OF THE ACTION

1.    This is an action for violations of RICO, breach of contract, fraud, and conversion against an association-in-fact enterprise preying on merchants in the hemp-cannabidiol market. Plaintiff Gaia is an online seller of dietary supplements containing industrial cannabidiol hemp oil, commonly referred to as "CBD." In need of reliable payment processing for its customers' credit cards, Gaia was contacted by telephone and by e-mail about a payment processor, defendant Pacific. Defendant Haboush and his co-conspirators touted Pacific's new technology, an online payment processing portal called "Ubiquity". According to Haboush, Ubiquity would allow Pacific to become Gaia's one-stop payment shop. Haboush also represented to Gaia, that defendant Pacific had direct relationships with banks in the U.S.

2.    Relying on these representations, Gaia entered into a Payment Processing Services Agreement ("Agreement") with Pacific. Gaia sold $148,524.35 worth of product during the first month of this relationship, but Pacific has not paid Gaia in violation of the parties' Agreement. Gaia soon realized that it had been defrauded. Pacific never had a direct relationship with any U.S. banks. Rather, it channeled Gaia's customer purchases through other companies, defendants Tre'Lage and Marin Rain, which aggregated the transactions with other merchant accounts before ultimately sending them through overseas companies for processing. Gaia's investigation of Defendants uncovered a far-ranging scheme, involving Haboush, multiple shell entities and a group of interrelated individuals, to defraud vulnerable CBD merchants in violation of RICO and state laws.

### THE PARTIES

3.    Plaintiff Gaia is a limited liability company formed under the laws of Colorado with its principal place of business located at 500 S. Arthur Ave. # 300, Louisville, CO 80027. Gaia specializes in manufacturing dietary supplements that contain CBD.

LIPSON NEILSON P.C.
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

LIPSON NEILSON P.C.

9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

4.      Defendant Pacific is a limited liability company formed under the laws of Nevada with its principal place of business located at 410 S. Rampart Boulevard, Suite 390, Las Vegas, NV 89145.

5.      Defendant Tre'Lage is a limited liability company incorporated under the laws of Wyoming with its principal place of business located at 410 S. Rampart Boulevard, Suite 390, Las Vegas, NV 89145.

6.      Defendant Marin Rain is a corporation incorporated under the laws of Florida with its principal place of business located at 6999 Aberfeldy Avenue, St. Petersburg, FL 33709.

7.      Defendant Haboush is the Chief Executive Officer of defendant Pacific and Managing Partner of Tre'Lage. He is a citizen of Canada, but resides and regularly transacts his affairs in Nevada.

8.      Defendant Soller is the President and Founding Partner of Tre'Lage. He is a citizen of Georgia, and regularly transacts his affairs in Nevada.

9.      Defendant N. Sollinger is a member of Pacific and the Manager Director of Tre'Lage. He is a citizen of and regularly transacts his affairs in Nevada.

10.     Defendant P. Sollinger is the Administrative Partner of Pacific and Tre'Lage. She is a citizen of Florida, and regularly transacts her affairs in Nevada.

11.     Defendant LaBier is the Chief Operating Officer of Tre'Lage. She is a citizen of New York, and regularly transacts her affairs in Nevada.

12.     Defendant Lovern is the Vice President and a shareholder with Marin Rain. He is a citizen of Florida, and regularly transacts his affairs in Nevada.

13.     Defendants Does 1-50 and XYZ Corps. 1-50 are persons and entities that received or benefitted from money or other property that has been fraudulently transferred by defendant Pacific. The true names of Does 1-50 and XYZ Corps. 1-50 are not yet known to Gaia, but are expected to be revealed during discovery, at which time Gaia will amend its pleading to name these defendants.

LIPSON NEILSON P.C.

9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500    Facsimile: (702) 382-1512

**JURISDICTION AND VENUE**

14.    This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 and 28 U.S.C. §§ 1331 & 1367. The Court may also have diversity jurisdiction under 28 U.S.C. §1332(a)(1).

15.    Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants reside or transact their affairs in this judicial district. In addition, venue is proper in this District pursuant to 28 U.S.C. § 1392(b)(2) because a substantial part of the events giving rise to the claims alleged occurred in this District.

**FACTS COMMON TO ALL CLAIMS**

**CBD Merchants Have Difficulty Engaging Payment Processors**

16.    Merchants who sell products directly to consumers require payment processors to not only handle purchases, but also to provide refunds to customers who request them.

17.    Because most CBD products are derived from industrial hemp, they are not controlled substances, as the United States Court of Appeals for the Ninth Circuit has held. But due to regulatory uncertainty regarding CBD, U.S. financial institutions are reluctant to provide services to merchants in the industrial hemp industry, leaving CBD merchants with limited access to essential financial services.

18.    Consequently, CBD merchants are often forced to look for credit card processing services from third parties that service so-called "high risk merchants."

19.    Once hired, these processors become a merchant's "middle man" with banks. They clear customer payments, issue and generate statements, and maintain processing data. Without these services, CBD merchants have no way to accept credit card sales.

20.    There are different types of third party payment processors. Independent Sales Organizations ("ISOs") are permitted to sell processing services related to major credit cards, such as Visa. ISOs sell products on behalf of processing companies that have direct relationships with banks. Another type of processor is a credit card aggregator.

Aggregators typically pool merchants' transactions from sub-processors and clear them through another ISO.

21.     Obtaining access to processing companies and banks is critical for online businesses because these companies have direct relationships with banks and ensure that each merchant client has a specific merchant ID that allows it to send and receive transactions from an acquiring bank. These account relationships provide payment stability for merchants and are highly desirable.

22.     Unfortunately, many scammers have entered the credit card aggregator business to take advantage of CBD merchants desperate for reliable processing.

23.     The scams generally involve payment processors who misrepresent their relationships with U.S. banks to induce CBD merchants into contracting for their services. Most processors understand that U.S.-based CBD merchants prefer to use domestic processing options, rather than off-shore banks, because relying on foreign payment centers often results in high charges, extra scrutiny and less certainty and reliability from customers and authorizing banks.

**Defendants Persuade Gaia to Use Pacific as a New Payment Processor**

24.     Founded by Brandon Beatty ("Beatty") in 2012, Plaintiff Gaia is in the business of manufacturing and selling CBD products directly to consumers over the internet.

25.     Beginning on or about October 20, 2016, defendants Haboush, N. Sollinger and LaBier contacted Gaia by e-mail on behalf of their company, Pacific.

26.     According to its website, Pacific is an "independent payment solutions provider specializing in global card processing for the e-commerce market," which "allows merchants to facilitate processing [for] any major credit card."

27.     Knowing that Gaia was a leader in the CBD market and likely needed credit card processing, Haboush, N. Sollinger and LaBier contacted Plaintiff to sell Pacific's "credit card processing services for CBD companies."

LIPSON NEILSON P.C.
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500    Facsimile: (702) 382-1512

28.   Using e-mail and the telephone, these Defendants represented that Pacific operated from Las Vegas, Nevada.

29.   These e-mails and phone calls continued for months until Beatty was contacted in spring of 2017, by non-party Jonathan Smith of Greenlink Financial, who operated as a sales partner for Pacific.

30.   Smith informed Beatty by email and phone on May 1, 2017 about a new direct and domestic merchant processing account, which unbeknownst to Gaia at the time was Pacific.

31.   Beatty informed Pacific, through Smith, that establishing relationships with domestic banks was critical for Gaia, and that Gaia was not interested in working with a processor that sent transactions to overseas banks.

32.   Beatty also stressed that Gaia did not want to work with a payment aggregator, and wanted its funds never to be bundled and processed with the funds of other merchants.

33.   Haboush, through Smith, represented by telephone and by e-mail that while Pacific was currently an aggregator, within a short time it would have direct relationships with U.S. domestic banks and could process Gaia's customers' credit card purchases in the U.S. Haboush, through Smith, also affirmatively represented by telephone that Pacific would not aggregate Gaia's funds.

34.   Relying on these representations, Gaia began using Pacific for payment processing.

35.   Pursuant to a Payment Processing Service Agreement between Gaia and Pacific, Pacific agreed to provide a "credit and debit card and other payment method clearing service" to "facilitate easy clearance of cash and efficient sale of goods and services from its website [bluebird-botanicals.com] …."

36.   These "services" included "obtaining authorization from appropriate banking authorities as to the ability of the card holder to make the payment required and collecting the respective amount of cash from a banking institution"; "collecting of the cash received

LIPSON NEILSON P.C.

9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

from a banking institution into a special client clearing account"; "notifying the client [about a] successful card authorization"; and "crediting the cash received from a banking institution to the client's account."

37. As stated in the Agreement, once a customer's credit card authorization was acquired and cash collected from the banking institution, funds would be credited to Gaia's account.

**Pacific Never Pays and Gaia Discovers Pacific Has No Relationship with US Banks**

38. Between May 19, 2017, and June 22, 2017, Gaia's customers purchased $148,524.35 in goods using Visa and MasterCard. Applying the appropriate Merchant Discount Rates and other fees, Gaia earned $115,851.35 on the sales.

39. According to Pacific's online payment portal, all of these transactions were "approved," and therefore, Pacific should have deposited $115,851.35 into Gaia's bank account. However, Pacific never credited any funds to Gaia.

40. By mid-June 2017, Beatty and Gaia's Chief Financial Officer, Steven Ostrom ("Ostrom") communicated their concerns about the missing funds to Haboush.

41. On June 13, 2017, Ostrom spoke with Haboush by telephone. Haboush stated that all of Gaia's credit card transactions to-date had been cleared and that the funds would be wired to Gaia's account by June 15, 2017.

42. When Pacific failed to wire the funds, Ostrom emailed Haboush on June 19 for an update. Haboush stated that he needed to "clear up the banking solution" and guaranteed that Gaia would receive its funds "in a couple of days."

43. The money did not arrive and Ostrom e-mailed Haboush on June 22 demanding information about the missing funds. Haboush replied by e-mail on June 23 that he and his partner, defendant Lovern, were "navigating a resolution" with their banking partners. This was the first time Haboush disclosed that Pacific worked with any other middlemen/processors.

LIPSON NEILSON P.C.

9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

**Defendants Use Shell Companies to Route Gaia's Funds Overseas**

44.     From May 19, 2017 through June 21, 2017 credit card billing statements from customers showed that purchases were routed through New York, New York.

45.     On June 22, 2017, Beatty and Ostrom heard from numerous customers that credit cards purchases from Gaia's website were not routed to a U.S. bank, but rather through banks in Nigeria.

46.     This news alarmed Gaia because Nigerian banks have a reputation for credit card fraud. Gaia immediately terminated the Agreement with Pacific and demanding immediate payment of all outstanding funds.

47.     Under questioning from Beatty and Ostrom, Haboush grew evasive and, through e-mails on June 26 and June 29, 2017, refused to divulge the location of Gaia's funds or why transactions were routed through Nigeria.

48.     Nevertheless, Haboush did reveal in that June 26 e-mail that Pacific sent Gaia's customer credit cards transactions to Tre'Lage, its alter ego, which then forwarded them for processing to Marin Rain,[1] a company operated by Lovern. In turn, Marin Rain then sent the transactions to a *different* off-shore entity, whose identity and exact location Haboush refused to disclose. In short, Haboush admitted that he lied when he represented that Pacific had direct relationships with U.S. domestic banks.

49.     Frustrated and confused by Haboush's convoluted story, Beatty again demanded payment and more details about who held Gaia's funds. Haboush refused to provide further details and passed Beatty's questions to Lovern, who, through Marin Rain, "managed" the banking relationship with the undisclosed payment processor.

50.     On July 2, 2017, Lovern wrote in an e-mail that he was "investigating" Piropay, the Hong Kong-based processor who purportedly controlled Gaia's funds. Lovern claimed that Piropay's Chief Executive Officer, John Dardashti, had absconded with the money but that Lovern and Haboush (with the assistance of multiple detectives) were

---

[1] At times, Haboush and Lovern referred to Marin Rain by its DBA, United Card Services.

LIPSON NEILSON P.C.
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

tracking him. Ominously, Lovern wrote that Gaia "could do absolutely nothing" to pursue Dardashti and that Lovern and Haboush would "come to a resolution soon."  Four days later, on July 6, Haboush emailed Gaia that he and Lovern had located Dardashti and were "dealing" with him.

51.    Beatty soon realized that this false story was meant to stall Gaia and give Haboush, Lovern and their co-conspirators time to launder the ill-gotten funds. Tellingly, when Beatty asked Haboush during a July 19, 2017 telephone conversation to see documents showing that Pacific/Tre'Lage had engaged Piropay to handle Gaia's credit card transactions, Haboush had no evidence to support his statements, and refused to divulge what banking institution they used to facilitate Gaia's transactions.

52.    However, while these events unfolded, Gaia received conflicting information about what actually took place with Pacific-Tre'Lage. Other CBD merchants and agents told Beatty that Tre'Lage was an account aggregator that pooled and processed multiple merchant transactions through one unique merchant account. On information and belief, this practice is strictly banned and when the acquiring bank discovered it, shut down Tre'Lage's account.

53.    On information and belief, Pacific-Tre'Lage and Marin Rain processed Gaia's credit card transactions until their account was closed, and, in order to continue the scam, transferred the processing to a bank in Nigeria. When the Nigerian connection surfaced and Gaia terminated the Agreement, defendants concocted a story about a rogue processor in order to delay Gaia's investigation and launder the funds to accounts under their control.

54.    To date, none of Gaia's $130,423.18 ($115,851.35 in transactions and $14,571.83 in reserves) has been paid and the fees Pacific charged Gaia to set up the Ubiquity pay portal have not been refunded.

55.    On information and belief, these monies remain under Defendants' custody and control and/or have been used to unjustly benefit Defendants.

LIPSON NEILSON P.C.
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

**Defendants' CBD Industry-Wide Racketeering Scheme**

56.     After terminating the Agreement, Gaia continued to investigate Pacific-Tre'Lage and learned that Defendants are running an association-in-fact criminal enterprise to defraud members of the CBD industry (the "CBD Scheme").

*(i) Defendants are Closely Connected and Each Plays an Illicit Role in the CBD Scheme*

57.     The Individual Defendants are all members of and exert control over the Company Defendants. Haboush is the Managing Member of Pacific and the Manager of Tre'Lage; N. Sollinger is the Managing Director of Tre'Lage; Soller is the CEO of Tre'Lage; P. Sollinger is the Administrative Partner at Pacific and Tre'Lage; and LaBier is Tre'Lage's COO.

58.     Defendant Lovern, vice president of Marin Rain, purportedly "manages" transactions with off-shore payment processors but, in reality, creates another layer to obfuscate the trail of stolen money and assist the other Defendants with laundering funds.

59.     Haboush and N. Sollinger are the client-facing side of the CBD Scheme. Using the telephone, emails, and other wires, they induce CBD merchants to enter Agreements with Pacific or Tre'Lage by affirmatively misrepresenting that their companies have direct connections with US banks and will process the merchant's credit card transactions in the US.

60.     Haboush, N. Sollinger and Soller also work with agents who unwittingly recruit CBD merchants to the Pacific/Tre'Lage payment platforms. These agents bring in new merchant accounts and increase revenue for the CBD Scheme.

61.     Pacific and Tre'Lage all operate from the same "virtual" offices in Nevada (410 S. Rampart Boulevard, Suite 390, Las Vegas, NV 89142) and Florida (110 E. Broward Boulevard, Suite 1700, Fort Lauderdale, FL 33301). A virtual office is a physical address that a business rents to give the appearance of being a professional outfit.

62.     P. Sollinger manages Pacific's and Tre'Lage's "virtual" Florida office in Fort Lauderdale (where P. Sollinger lives), while LaBier runs Tre'Lage's New York office, from a

LIPSON NEILSON P.C.
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

mobile home near the New York-Canadian border. Defendants P. Sollinger and LaBier thus manage the companies' fraudulent internal apparatus, while Haboush, N. Sollinger and Soller maintain its professional façade.

63.     Finally, Pacific-Tre'Lage works with Marin Rain, operated by its officer Lovern, to "process" the CBD merchant credit card accounts. Marin Rain is another shell entity Defendants use to obscure the trail of merchant funds.

*(ii) Defendants' Have Committed the Same Predicate Acts (Wire Fraud and Money Laundering) Against Other CBD Merchants and Agents*

64.     In early 2017, non-party CBDistillery, a Colorado-based online purveyor of CBD oils, had difficulty locating a reliable payment processor for its credit card transactions.

65.     One of CBDistillery's processing agents, Mile High Processing, introduced Chase Terwilliger ("Terwilliger"), CBDistillery's President, to Tre'Lage and its operators, Haboush and LaBier.

66.     As they did to Gaia, Haboush and LaBier represented through phone calls and emails that Tre'Lage's payment portal was the solution to CBDistillery's needs and stated that Tre'Lage had direct contacts with US banks and would process CBDistillery's credit card transactions domestically.

67.     Because of Haboush's and LaBier's misrepresentations, CBDistillery agreed to work with Tre'Lage.

68.     On or around June 22, 2017 CBDistillery learned that its customers' credit cards were being processed through Nigerian banks. Much like Gaia, CBDistillery immediately discontinued its relationship with Tre'Lage and demanded payment of all processed funds.

69.     When CBDistillery questioned Haboush about the Nigerian merchant bank processing, Haboush told a similar story: an unnamed foreign processor had absconded with CBDistillery's money. However, when pressured, Haboush, LaBier and Lovern admitted that this rogue processor was not Piropay or Dardashti. In other words, Haboush,

LIPSON NEILSON P.C.
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500    Facsimile: (702) 382-1512

LaBier and Lovern concocted a slightly revised story to confuse CBDistillery and give themselves time to launder the stolen funds.

70. In the end, however, the results were the same: CBDistillery never received any of its funds, approximately $150,000, from Tre'Lage and Haboush, LaBier and Lovern have ceased to cooperate with CBDistillery.

71. Gaia and CBDistillery are not the only victims. Non-party Risk Free Merchant ("Risk Free"), another sales organization for "high risk" merchant credit card processing accounts, referred several CBD merchant clients to Pacific-Tre'Lage in 2017.

72. Responding to his customer's complaints about non-payment from Pacific-Tre'Lage, Risk Free's Chief Executive Officer, Todd Fins ("Fins"), e-mailed Haboush on June 23, 2017 requesting information for all the merchant accounts he referred to Pacific-Tre'Lage.

73. Fins also demanded to know why his clients' accounts showed that their transactions were "approved" but no funds were credited to their accounts. He also demanded to know why he had never been paid for his services.

74. Despite the fact that Gaia had had never contracted with any other processor besides Defendants', Haboush responded that Pacific-Tre'Lage had no documentation for **any** merchant accounts because "those documents are only available from the processors that contracted with the merchants, and not Pacific-Tre'Lage," and added that the monies had been stolen by another "foreign" processor whose name Haboush refused to disclose.

75. On information and belief, Haboush never provided the documents Fin requested and Pacific-Tre'Lage continues to hold the funds due and owing not only to Risk Free but also many of its merchant clients.

## FIRST CLAIM FOR RELIEF

### (Violation of RICO, 18 U.S.C. § 1962(c), Against All Defendants)

76. The allegations of paragraphs 1 through 76 are incorporated herein by reference.

LIPSON NEILSON P.C.

9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

77.     Defendant Pacific is a "person" as that term is defined in 18 U.S.C. §1961(3) because it is an entity capable of holding a legal or beneficial interest in property.

78.     Defendant Tre'Lage is a "person" as that term is defined in 18 U.S.C. §1961(3) because it is an entity capable of holding a legal or beneficial interest in property.

79.     Defendant Haboush is a "person" as that term is defined in 18 U.S.C. §1961(3) because he is an individual capable of holding a legal or beneficial interest in property.

80.     Defendant N. Sollinger is a "person" as that term is defined in 18 U.S.C. §1961(3) because he is an individual capable of holding a legal or beneficial interest in property.

81.     Defendant Soller is a "person" as that term is defined in 18 U.S.C. §1961(3) because he is an individual capable of holding a legal or beneficial interest in property.

82.     Defendant Lovern is a "person" as that term is defined in 18 U.S.C. §1961(3) because he is an individual capable of holding a legal or beneficial interest in property.

83.     Defendant P. Sollinger is a "person" as that term is defined in 18 U.S.C. §1961(3) because he is an individual capable of holding a legal or beneficial interest in property.

84.     Defendant LaBier is a "person" as that term is defined in 18 U.S.C. §1961(3) because he is an individual capable of holding a legal or beneficial interest in property.

85.     Defendant Pacific is an "enterprise" as that term is defined in 18 U.S.C. §1961(4) because it is a legal entity organized and existing under the laws of the State of Nevada.

86.     Defendant Tre'Lage is an "enterprise" as that term is defined in 18 U.S.C. §1961(4) because it is a legal entity organized and existing under the laws of the State of Wyoming.

87.     The Individual Defendants perpetrated a scheme with one or more of the Corporate Defendants where, using the telephone and the internet, they deceived Gaia into

entering an Agreement for payment processing services only to steal the funds they processed on Gaia's behalf.

88.     The Individual Defendants also perpetrated a scheme with one or more Corporate Defendants whereby they knowingly transferred Gaia's stolen funds through interstate commerce and have laundered the stolen monies for their financial benefit.

89.     The Individual Defendants have perpetrated this same scheme on multiple CBD merchants and agents, as detailed *supra*, and will foreseeably continue to this scheme.

90.     In furtherance of their fraudulent schemes, Defendants willfully and with actual knowledge committed multiple acts over the past two years to the present time, including but not limited to, wire fraud under 18 U.S.C. §1343 and money laundering under 18 U.S.C. §1956(a)(1)(A)(1) and 1957. These acts constitute a pattern of racketeering behavior pursuant to 18 U.S.C. §1961.

91.     All Defendants participated directly and indirectly in the conduct of the enterprises' affairs through the pattern of racketeering activity described herein, in violation of 18 U.S.C. §1962.

92.     As a direct and proximate result of the racketeering activities of Defendants, Plaintiff has been injured in its business and property, including loss of $130,423.18 in funds and lost customers and profits.

### SECOND CLAIM FOR RELIEF

### (RICO Conspiracy, 18 U.S.C. § 1962(d), Against All Defendants)

93.     The allegations of paragraphs 1 through 93 are incorporated herein by reference.

94.     The Individual Defendants perpetrated a scheme with one or more of the Company Defendants whereby they used electronic means to transfer knowingly false information to Plaintiff in order to deceive it on at least five occasions.

LIPSON NEILSON P.C.

9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144

Telephone: (702) 382-1500   Facsimile: (702) 382-1512

95.    The Individual Defendants also perpetrated whereby they knowingly transferred Plaintiff's stolen funds through interstate commerce and have laundered the stolen monies for their financial benefit.

96.    The Individual Defendants and Company Defendants conspired in the CBD Scheme for the expressed purpose of unlawfully deceiving Plaintiff into contracting for Defendant Pacific's payment processing services, then misappropriating Plaintiff's funds and knowingly transferring them through interstate commerce for Defendants' direct benefit.

97.    The Company Defendants constitute enterprises, and the association-in-fact among the Individual Defendants also constitutes an enterprise, which engaged in and acted in concert with the Company Defendants to deceive Plaintiff, steal its funds, and launder the stolen monies for their direct benefit.

98.    Defendants, by and through their improper and fraudulent activities and wrongful conduct, willfully and with actual knowledge, agreed and did conduct and participate in the conduct of the enterprises' affairs through a pattern of racketeering activity for the purpose of intentionally stealing the funds of Plaintiff and other CBD merchants and agents.

99.    Defendants willfully and with actual knowledge transferred funds stolen from Plaintiff and other CBD merchants and agents by electronic means through interstate commerce in violation of 18 U.S.C. §1956(a)(1)(A)(1), §1956(a)(1)(A)(1) and 1957.

100.    Defendants' acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961.

101.    All Defendants directly and indirectly participated in the conduct of the enterprises' affairs through the pattern of racketeering activity described herein, in violation of 18 U.S.C. 1962(c).

102.    As a direct and proximate result of the racketeering activities of Defendants, Plaintiff has been injured in its business and property, including loss of $130,423.18 in funds and lost customers and profits.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract Against Pacific)**

103.   The allegations of paragraphs 1 through 103 are incorporated herein by reference.

104.   Pursuant to the Payment Processing Services Agreement, entered into between Gaia and Pacific on or about April 21, 2017, Pacific was required to notify the client about successful card authorizations and "credit the cash received from a banking institution to the client's account."

105.   Pacific breached the Payment Processing Services Agreement because it failed to credit any funds for sales on Plaintiff's website to the appropriate account, despite the transactions being "approved" and Haboush's multiple representations (in paragraphs 54-55) that the monies were ready for deposit.

106.   Gaia is therefore entitled to damages equal to the $130,423 in funds that were received from authorized credit card transactions for purchases on Gaia's website but never transferred to Gaia's appropriate account.

**FOURTH CLAIM FOR RELIEF**

**(Fraud Against All Defendants)**

107.   The allegations of paragraphs 1 through 107 are incorporated herein by reference.

108.   The fraudulent statements and misrepresentations, and omissions giving rise to this fraud claims, are set forth in detail above. In short, defendants Haboush and Sollinger represented to Plaintiff before it entered the Agreement that Pacific would serve as Plaintiff's lone payment processor, and that Pacific had direct relationships with U.S.-based acquiring banks. Plaintiff justifiably relied on these representations as Defendants held Pacific out as a payment processor and represented orally and in writing that it processed payments. Defendants knew these representations were false because Pacific lacked the ability to provide these services and instead served only to onboard clients such as Gaia into their CBD Scheme with the goal of swindling their funds.

LIPSON NEILSON P.C.
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

109.   Moreover, Defendants never revealed Pacific's relationship with Tre'Lage until long after Plaintiff had entered into the Agreement with Pacific. Further, Haboush and Sollinger failed to disclose that Pacific and Tre'Lage did not process payments or that Plaintiff's transactions were to be processed by multiple other processors, such as Marin Rain or Piropay.

<strong>FIFTH CLAIM FOR RELIEF</strong>

<strong>(Conversion Against All Defendants)</strong>

110.   The allegations of paragraphs 1 through 110 are incorporated herein by reference.

111.   Defendants Pacific and Tre'Lage, operated by their principals, Haboush, Soller, N. Sollinger and P. Sollinger, have processed credit card payments from Gaia's customers and held onto $130,423.18 in those monies without Plaintiff's authorization or consent. In doing so, these parties have wrongfully exerted dominion and control over Plaintiff's property.

112.   Defendant Pacific had no right under the Agreement to hold or use Plaintiff's funds in the manner they did as alleged above.

113.   Defendant Tre'Lage had no right to access, receive, hold or use Plaintiff's funds in the manner they did as alleged above.

114.   On multiple occasions, Plaintiff demanded the return of funds that were wrongfully converted by Defendants Pacific, Tre'Lage, Haboush, Soller, N. Sollinger, P. Sollinger and LaBier. The funds have not been returned to Gaia to-date.

115.   Defendants Pacific, Tre'Lage, Haboush, Soller, N. Sollinger, P. Sollinger and LaBier's conversion of Gaia's property damaged Gaia, caused Gaia to suffer lost profits and damaged Gaia's business, reputation, opportunities and customer base.

116.   Haboush is personally liable for the actions of Pacific and Tre'Lage. Haboush presents himself as the Managing Member for both entities and he influenced and made decisions regarding Pacific and Tre'Lage. He has used ill-gotten gains for personal use, and engaged in the other conduct set forth herein. The identical or substantially identical

LIPSON NEILSON P.C.

9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

ownership of Pacific and Tre'Lage creates such a unity of interest and ownership that Haboush is inseparable from Pacific and Tre'Lage. Moreover, Pacific and Tre'Lage are a mere alter ego, shell instrumentality and conduit for Haboush's and his colleagues' actions, and individuality and separateness does not exist. Treating Pacific and Tre'Lage and Haboush as separate entities would sanction a fraud or promote injustice under the egregious circumstances enumerated in this complaint.

117.   Soller is personally liable for the actions of Pacific and Tre'Lage. Soller is the founder and Chief Executive Officer of Tre'Lage and he influenced and made decisions regarding Tre'Lage and Pacific, its alter ego. He has used ill-gotten gains for personal use, and engaged in the other conduct set forth herein. The identical or substantially identical ownership of Pacific and Tre'Lage creates such a unity of interest and ownership that Soller is inseparable from Pacific and Tre'Lage. Moreover, Pacific and Tre'Lage are a mere alter ego, shell instrumentality and conduit for Soller's and his colleagues' actions, and individuality and separateness does not exist. Treating Pacific and Tre'Lage and Soller as separate would sanction a fraud or promote injustice under the egregious circumstances enumerated in this complaint.

118.   N. Sollinger is personally liable for the actions of Pacific and Tre'Lage. N. Sollinger is the Managing Director of Tre'Lage and he influenced and made decisions regarding Tre'Lage and Pacific, its alter ego. He has used ill-gotten gains for personal use, and engaged in the other conduct set forth herein. The identical or substantially identical ownership of Pacific and Tre'Lage creates such a unity of interest and ownership that N. Sollinger is inseparable from Pacific and Tre'Lage. Moreover, Pacific and Tre'Lage are a mere alter ego, shell instrumentality and conduit for N. Sollinger's and his colleagues' actions, and individuality and separateness does not exist. Treating Pacific and Tre'Lage and N. Sollinger as separate would sanction a fraud or promote injustice under the egregious circumstances enumerated in this complaint.

119.   P. Sollinger is personally liable for the actions of Pacific and Tre'Lage. P. Sollinger is the Managing Director of Tre'Lage and she influenced and made decisions

**LIPSON NEILSON P.C.**
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

LIPSON NEILSON P.C.

9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512

regarding Tre'Lage and Pacific, its alter ego. She has used ill-gotten gains for personal use, and engaged in the other conduct set forth herein. The identical or substantially identical ownership of Pacific and Tre'Lage creates such a unity of interest and ownership that P. Sollinger is inseparable from Pacific and Tre'Lage. Moreover, Pacific and Tre'Lage are a mere alter ego, shell instrumentality and conduit for P. Sollinger's and her colleagues' actions, and individuality and separateness does not exist. Treating Pacific and Tre'Lage and P. Sollinger as separate would sanction a fraud or promote injustice under the egregious circumstances enumerated in this complaint.

120.   LaBier is personally liable for the actions of Pacific and Tre'Lage. LaBier is the Chief Operating Officer of Tre'Lage and she influenced and made decisions regarding Tre'Lage and Pacific, its alter ego. She has used ill-gotten gains for personal use, and engaged in the other conduct set forth herein. The identical or substantially identical ownership of Pacific and Tre'Lage creates such a unity of interest and ownership that LaBier is inseparable from Pacific and Tre'Lage. Moreover, Pacific and Tre'Lage are a mere alter ego, shell instrumentality and conduit for P. Sollinger's and her colleagues' actions, and individuality and separateness does not exist. Treating Pacific and Tre'Lage and LaBier as separate would sanction a fraud or promote injustice under the egregious circumstances enumerated in this complaint.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all the issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gaia respectfully requests judgment against Defendants for the following:

A.   On the First Claim for Relief, actual damages in an amount in excess of $10,000 to be determined at trial but in no event less than $130,423 prior to trebling, and reasonable attorneys' fees and expenses;

B.  On the Second Cause of Action, actual damages in an amount in excess of $10,000 to be determined at trial but in no event less than $130,423 prior to trebling, and reasonable attorneys' fees and expenses;

C.  On the Third Cause of Action, actual damages in an amount in excess of $10,000 to be determined at trial but in no event less than $130,423;

D.  On the Fourth Cause of Action actual damages in an amount in excess of $10,000 to be determined at trial but in no event less than $130,423, plus punitive damages;

E.  On the Fifth Cause of Action, actual damages in an amount in excess of $10,000 to be determined at trial but in no event less than $130,423, plus punitive damages;

F.  Prejudgment Interest;

G.  Costs including attorneys' fees as provided by law or rule of the court; and

H.  Any other relief the Court deems proper.

DATED this 24th day of April, 2018.

LIPSON NEILSON P.C.

By:____/s/ Kaleb Anderson_____
KALEB D. ANDERSON, ESQ. (NV Bar No. 7582)
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada  89144
(702) 382-1500

and

KENT, BEATTY & GORDON, LLP
Joshua B. Katz, Esq.
Eleven Times Square
New York, NY 10036
Phone: (212) 421-4300
jbk@kbg-law.com
*Pro Hac Vice Application forthcoming*

*Attorneys for Plaintiff*

LIPSON NEILSON P.C.
9900 Covington Cross Drive, Suite 120, Las Vegas, Nevada 89144
Telephone: (702) 382-1500   Facsimile: (702) 382-1512